UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>FITZ WILLIAM GUERIN,<br><br>    Defendant. | Case No. 12-cv-00187-MEJ<br><br>**ORDER RE: MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 16 |

## INTRODUCTION

Pending before the Court is Plaintiff United States of America's (the "Government") Motion for Summary Judgment to reduce three outstanding federal tax assessments against Defendant Fitz William Guerin ("Defendant") to judgment. Dkt. No. 16. Having considered the parties' briefs and oral arguments at the April 10, 2014 hearing, relevant legal authority, and the record in this case, the Court GRANTS the Government's motion for the reasons set forth below.

## BACKGROUND[1]

In 1994, Defendant and a partner purchased an existing business, Hotel Connections, Inc., and renamed the company Orbit Network, Inc. ("Orbit"). Undisputed Material Facts ("UMF") ¶4, Dkt. No. 30. Orbit was a software development and advertising firm that provided services to businesses in the travel industry. *Id.* Defendant was Orbit's President and Chief Executive Officer from its founding until October 5, 1999, when he resigned. *Id.* Defendant was also a minority shareholder of Orbit. *Id.* ¶6. His responsibilities included supervising Orbit's senior management, and Defendant himself never had a supervisor at Orbit. *Id.* ¶7. Defendant was an

---

[1] Unless otherwise stated, the facts are undisputed.

authorized signer on Orbit's bank accounts, there were no restrictions on his ability to sign checks on Orbit's behalf, and he did sign checks on Orbit's behalf. *Id*. While others were also authorized signers on Orbit's bank accounts, Defendant alone was authorized to issue checks without a co-signer. *Id.* ¶8.

Defendant signed quarterly employment tax returns (Forms 941) on behalf of Orbit, hired and terminated employees, hired and terminated employees of Orbit, and was solely responsible for hiring and terminating members of Orbit's senior management. *Id*. ¶¶9-10. Defendant also signed contracts and agreements binding Orbit, including a Binding Letter of Intent between Orbit and Divot Golf Corporation which contemplated a merger of the two companies. *Id.* ¶11. In addition, Defendant represented Orbit in meetings with financial backers and potential investors. *Id.* ¶12.

Defendant was a member of the senior management team that ran Orbit, and he had the final say on the general strategic direction of Orbit. Pl.'s Stmt. No. 13, Dkt. No. 17. Defendant had the final say on significant financial decisions such as purchasing another company. *Id*. Defendant denies that he alone had the final say on purchasing another company because strategic and significant financial decisions were made collaboratively. Def.'s Stmt. No. 13, Dkt. No. 30. However, in his deposition, the Government notes that Defendant testified that: (1) he was responsible for making decisions about the strategic direction of Orbit; and (2) he had the "final say" with respect to acquisitions. Reply at 3-4, Dkt. No. 31 (citing Pittman Decl., Ex. 1 (Guerin Dep.) at 56:6–56:17, and 57:23–58:8, Dkt. No. 25)).

Among others, Defendant had the authority to, and did, determine to whom corporate disbursements would be made on behalf of Orbit, and to direct that such disbursements be made. UMF ¶14. Among others, Defendant was responsible for collecting, accounting for, and paying over federal withholding taxes for Orbit. *Id*.

In IRS Form 4180, "Report of Interview," which he completed and signed on March 25, 2000, Defendant admitted that: He was a founder of Orbit; he was President of Orbit; he was employed by Orbit from August 1996 through October 5, 1999; he owned approximately 8% of Orbit; and that, while he was employed by Orbit, his duties included: "Direct[ing] an executive

1  management staff;" managing employees; hiring and firing employees; dealing with major
2  customers; signing or countersigning corporate checks; making or authorizing bank depots;
3  authorizing payroll checks; and authorizing payment of federal tax deposits. *Id.* ¶22.

4  Defendant became aware that Orbit had failed to make timely payments to the IRS of
5  federal withholding taxes no later than June 1, 1998. *Id.*¶16.  After Defendant became aware, he
6  continued to authorize payments by Orbit to creditors other than the Government, including
7  payments to himself. *Id.* ¶17.  Between April 1, 1999 and September 30, 1999, Defendant
8  personally signed checks payable to creditors other than the Government (including himself) with
9  an aggregate value of no less than $149,282 drawn against Orbit's bank accounts. *Id.* ¶18.
10  Between April 1, 1999 and September 30, 1999, Defendant's automated signature was placed on
11  checks payable to creditors other than the Government (including Defendant) with an aggregate
12  value of no less than $157,464 drawn against Orbit's bank accounts. *Id.* ¶19.

13  During 1998 and 1999, Defendant regularly communicated with representatives of the IRS
14  regarding Orbit's accumulating tax liabilities. *Id.* ¶20.  Between April 1, 1999 and September 30,
15  1999, at least $2,241,000 was withdrawn from Orbit's bank accounts. *Id.* ¶21.

16  Since 2000, the Government has assessed liabilities against Defendant for failure to
17  collect, account for, and pay withheld taxes of Orbit under 26 U.S.C. § 6672.[2]  On March 6, 2000,
18  the Government made assessments of liabilities for: the fourth quarter of 1996; the first second
19  and fourth quarters of 1997; and the first, second and third quarters of 1998, in the amount of
20  $670,203.74 (the "First Assessment").[3]  *Id.* ¶1.  Although the First Assessment covers several
21  quarters' liabilities, it was assessed in a "lump sum" for the second quarter of 1998.  Thus,
22  although the First Assessment included liabilities for several quarters, it may have been referred to
23  as an assessment for: "the second quarter of 1998;" "the period ending June 30, 1998," "6/1998,"
24  or "6/30/1998."  Burgos[4] Decl. ¶4, Dkt. No. 32.  On February 10, 2003, the Government made

---

[2] Section 6672 imposes liability for "the total amount of the tax evaded, or not collected, or not accounted for and paid over."  26 U.S.C. § 6672(a).
[3] Defendant does not deny these assessments were made at this time, but he claims that they cannot be included in the Action filed by the Government because they are time barred.  Def.'s Stmt. Facts. 1.
[4] Stephen A. Burgos is a Revenue Officer with the Internal Revenue Service ("IRS") in San

assessments of liabilities for the second quarter of 1999 in the amount of $72,000 (the "Second Assessment"). *Id.* ¶2. On February 10, 2003, the Government made assessments of liabilities for the third quarter of 1999 in the amount of $143,025.97 (the "Third Assessment"). *Id.* ¶3.

As of May 31, 2013, the total amount owed for the assessments, including statutory interest and additions from the date of the assessments, less any payments or credits, was $241,002.64 for the First Assessment, $121,406.54 for the Second Assessment, and $241,002.64 for the Third Assessment. *Id.* ¶¶23-25.

On January 26, 2005, the IRS issued a "Final Notice–Notice of Intent to Levy and Notice of Your Right to a Hearing (Letter 1058)" to Defendant regarding the First Assessment. Burgos *Id.*¶5. No later than February 25, 2005, Burgos received a written request from Defendant's attorney for a pre-levy Collection Due Process hearing pursuant to 26 U.S.C. § 6330. *Id.* ¶8. Once Defendant requested a Collection Due Process hearing, his case was assigned to an Appeals Settlement Officer, who ultimately sustained the IRS's proposed actions on or about July 25, 2006. *Id.* ¶11. Defendant then petitioned the United States Tax Court for review of the Appeals Settlement Officer's decision of his Collection Due Process notice in Tax Court Case No. 16819-06L, filed on August 28, 2006. *Id.* ¶12. On January 9, 2007, the Tax Court dismissed Defendant's Petition for lack of jurisdiction. *Id.* ¶13. 683 days elapsed between February 25, 2005, the date Defendant requested a Collection Due Process hearing with respect to this proposed assessment, and January 9, 2007, the date the Tax Court dismissed Defendant's Petition seeking to appeal the result of his Collection Due Process hearing. *Id.* ¶16.

## PROCEDURAL HISTORY

On January 11, 2012, the Government filed the present Complaint, seeking to reduce to judgment outstanding federal tax assessments against Defendant. Dkt. No. 1. Defendant filed an answer on February 16, 2012. Dkt No. 4. The Government filed the present Motion for Summary Judgment ("MSJ") on February 6, 2014. Dkt. No. 16. The Government argues that it is entitled to judgment as a matter of law because: (1) the assessments at issue were made against Defendant by

---

Rafael, California. Burgos Decl. ¶ 1, Dkt. No. 32.

a duly authorized delegate of the Secretary of the Treasury pursuant to 26 U.S.C. § 6672 as a result of Defendant's failure to collect, truthfully account for, and pay over the withheld Trust Fund taxes of Orbit for several tax periods in 1996, 1997, 1998 and 1999; (2) there are no disputed material facts controverting the evidence that Defendant was a "responsible person" within the meaning of § 6672 during the periods at issue; and (3) there are no disputed material facts controverting the evidence that Defendant "willfully" failed to collect or pay over the taxes at issue within the meaning of § 6672. MSJ at 2.

On March 27, 2014, Plaintiff filed an Opposition in which he argues that summary judgment is not appropriate because there are genuine issues of material fact as to whether: (1) the first assessment is time-barred; (2) Defendant is a responsible person within the meaning of the statute; and (3) the Government could have collected from another party. Dkt. No. 28. The Government filed its Reply on April 3, 2014, in which it proposed additional undisputed facts establishing the timeliness of the First Assessment. Dkt. No. 30. Defendant did not object to the inclusion of the additional facts.

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 994 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving

party's case. *Celotex*, 477 U.S. at 324-25.

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250. It is not the task of the Court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

In an action to collect tax under §6672, "the government bears the initial burden of proof." *Oliver v. United States*, 921 F.2d 916, 919 (9th Cir. 1990). The Government may normally satisfy this burden "by introducing into evidence its assessment of taxes due." *Id*. "The assessment of the tax creates a prima facie case of liability, and the person against whom the penalty is levied bears the burden of establishing by a preponderance of the evidence that at least one of the two elements of section 6672 liability does not exist." *Schwinger v. United States*, 652 F. Supp. 464, 466 (E.D.N.Y. 1987); *United States v. Jones*, 33 F.3d 1137, 1139 (9th Cir. 1999).

**DISCUSSION**

**A. Whether the First Assessment Is Time Barred**

Defendant argues that as a threshold matter, the Government failed to meet its burden of establishing that the First Assessment was timely filed. Opp'n at 3. The statute of limitation for bringing suit to collect an assessed tax is ten years from the date of assessment. 26 U.S.C. § 6502(a)(1). However, this statute is tolled for the period during which a taxpayer's Collection Due Process hearing, or an appeal thereof in Tax Court, is pending. 26 U.S.C. § 6330(e)(1) ("if a hearing is requested under subsection (a)(3)(B), the levy actions which are the subject of the

requested hearing and the running of any period of limitations under section 6502 (relating to collection after assessment), section 6531 (relating to criminal prosecutions), or section 6532 (relating to other suits) shall be suspended for the period during which such hearing, and appeals therein, are pending…").

Here, the First Assessment occurred on March 6, 2000. Bugos Decl. ¶3. The statute of limitations to bring an action for this assessment was thus March 6, 2010. However, the statute was tolled between the date Defendant requested a Collection Due Process hearing regarding the IRS's notice of intent to file a lien and take levy action, which occurred no later than February 25, 2005, and the date his appeal of the Appeals Settlement Officer's decision sustaining the IRS's proposed actions to the Tax Court was dismissed by the Tax Court for lack of jurisdiction, on January 9, 2007 - a period of 683 days. *Id.* ¶16. Thus, the statute of limitations was extended by at least 683 days from March 6, 2010 to January 18, 2012. 26 U.S.C. § 6330(e)(1). As the Government filed this action on January 11, 2012, seven days before the expiration of the statute of limitations, it is timely filed.[5]

**B. Liability Under 26 U.S.C. § 6672**

Section 6672(a) provides, in relevant part, that:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall ... be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

22 U.S.C. § 6672(a). Under § 6672(a), an individual may be held liable for unpaid withholding taxes if: (1) he or she was a "responsible person" for collection and payment of the employer's taxes; and (2) he or she "willfully" failed to pay the tax. *Jones*, 33 F.3d at 1139 (9th Cir. 1999). For the purposes of § 6672, a "person" includes "an officer or employee of a corporation . . . who

---

[5] Defendant, as the non-moving party, correctly argues, that he is "not required to prove or disprove that the Government timely filed its action," and need only point out that there is a genuine issue of material fact. Opp'n at 2. However, once the Government met this burden, Defendant was required to set forth specific facts showing that some genuine issue for trial remained with respect to this issue in order to defeat the motion. Fed. R. Civ. P. 56(e). Defendant was given the opportunity to do so at the hearing on the Motion, but did not.

. . . is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b).

Although the statute is phrased in the conjunctive, it is not necessary that the person assessed under § 6672 be responsible for all the duties set forth in the statute. *Slodov v. United States*, 436 U.S. 238, 250 (1978). That is, the phrase "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title" was not meant to limit the application of § 6672 to persons in a position to perform all three such functions; rather, the statute was intended to apply to persons responsible for the collection of third-party taxes. *Id.*

1. Whether Defendant Is a "Responsible Person"

The Government argues that Defendant was undisputedly a "responsible person" within the meaning of section 6672 during the periods at issue. MSJ at 10. Identifying whether an individual is a statutory "responsible person" is a question of "status, duty, and authority." *Davis v. United States*, 961 F.2d 867, 873 (9th Cir. 1992). The person must have "the authority required to exercise significant control over the corporation's financial affairs, regardless of whether he exercised such control in fact. The authority that permits control carries with it a nondelegable duty to ensure that withholding taxes are duly collected and paid over to the government." *Purcell v. United States*, 1 F.3d 932, 937 (9th Cir. 1993).

Courts use a number of factors to determine whether a person is a "responsible person" for purposes of imposing liability. Although no single factor is dispositive in evaluating whether an individual is a "responsible person" within the meaning of § 6672(a), "the most critical factor is whether a person had significant control over the enterprise's finances." *United States v. Chapman*, 7 Fed. App'x. 804, 807 (9th Cir. 2001) (citations omitted). An individual is more likely to be found responsible if he or she: (1) holds corporate office; (2) has check-signing authority; (3) can hire and fire employees; (4) manages the day-to-day operations of the business; (5) prepares payroll tax returns; (6) signs financing contracts; and (7) determines financial policy. *Jones*, 33 F.3d at 1140-41; *Jordan v. United States*, 359 F. App'x 881, 882 (9th Cir. 2002). More than one person may be held liable under § 6672(a); an individual need not be "the most responsible." *Chapman*, 7 Fed. App'x. at 806-07.

8

Applying these factors to this case, the Court finds there is no genuine dispute that Defendant is a responsible person. As to the first factor, Defendant was a founder of the company and served as President and Chief Executive Officer until October 5, 1999, when he resigned. UMF ¶¶4-5. Defendant was also a minority shareholder and a member of the senior management team that ran the company. *Id*. ¶¶6, 13. As to the second factor, it is undisputed that Defendant supervised senior management, but never had a supervisor himself. *Id*. ¶7. Defendant could hire and fire employees, and was solely responsible for hiring and terminating members of Orbit's senior management. *Id*. ¶¶9, 10.

The evidence is also undisputed as to the third factor. Defendant was an authorized signer on Orbit's bank accounts, there were no restrictions on his ability to sign checks on Orbit's behalf, and he signed checks on Orbit's behalf. *Id*. While others were also authorized signers on Orbit's bank accounts, Defendant alone was authorized to issue checks without a co-signer. *Id.* ¶8. As to the fourth factor, it is undisputed that Defendant also managed the day to day operations of the business, such as "[d]irect[ing] an executive management staff;" "managing employees;" "signing or countersigning corporate checks;" "making or authorizing bank depots;" and "dealing with major customers." *Id*. ¶22.

Defendant had the authority to, and did, sign quarterly employment tax returns (Forms 941) on behalf of Orbit. *Id*. ¶9. Among others, Defendant was responsible for collecting, accounting for, and paying over federal withholding taxes for Orbit. *Id*. ¶15. Thus, there is undisputed evidence that Defendant satisfies the fifth factor. It is also undisputed that Defendant had the authority to sign contracts and agreements binding Orbit, including a Binding Letter of Intent between Orbit and Divot Golf Corporation which contemplated a merger of the two companies. *Id*. ¶11. Defendant represented Orbit in meetings with financial backers and potential investors. *Id*. ¶12. This is sufficient evidence to satisfy the sixth factor.

As to the seventh factor, it is undisputed that Defendant, among others, had the authority to, and did, determine to whom corporate disbursements would be made on behalf of Orbit, and to direct that such disbursements be made. *Id*. ¶14. Moreover, Defendant testified that he was responsible for making decisions about the strategic direction of Orbit; and that he had the "final

9

say" with respect to acquisitions. Pittman Decl., Ex. 1 (Guerin Dep.) at 56:6–56:17, and 57:23–58:8.

Defendant does not contest this evidence, although he disputes that the evidence establishes that he had final say on financial decisions.[6] Def.'s Stmt. Facts at ¶13. Defendant also denies that "he had the final say on purchasing another company" and states that "strategic and significant financial decisions were made collaboratively, including the signing of a letter of intent regarding purchasing another company." *Id.* However, these disputed facts do not create a material issue of fact as to whether Defendant exercised significant control over the enterprise's finances because "section 6672 does not confine liability for the unpaid taxes only to the single officer with the greatest or closest control or authority over corporate affairs." *Chapman*, 7 Fed. App'x. at 806-07 (quoting *Gephart v. United States*, 818 F.2d 469, 476 (6th Cir. 1987)). Thus, Defendant may be held responsible because the undisputed facts show that he had the ability to exercise significant control over the company's financial affairs. *Id.*

Having considered all of the factors, the Court finds that Defendant was a responsible person at Orbit under section 6672 during each of the quarters at issue. Defendant "exercise[d] significant control over the corporation's financial affairs." *Jones*, 33 F.3d at 1140. In addition to being one of the corporate officers responsible for collecting, accounting for, and paying over federal withholding taxes for Orbit, Defendant's significant involvement in obtaining and carrying out the company's business, supervisory duties, authority to sign checks, obtain financing, sign quarterly employment tax returns, and position as president of the company, demonstrate that he was a "responsible" person within the meaning of § 6672.

2. <u>Whether Defendant Willfully Failed to Collect, Account for, or Remit Payroll Taxes</u>

The Government argues that the undisputed evidence establishes that Defendant "willfully" failed to collect or pay over the taxes at issue within the meaning of section 6672. MSJ at 12. A responsible person may not be held personally liable under section 6672(a) unless his or

---

[6] At his deposition, Defendant testified that he had the final say on the general strategic direction of Orbit. Guerin Dep. at 56:6–17. Defendant also testified that he had the "final say" with respect to acquisitions. *Id.* at 57:23–58:8.

10

her failure to collect, account for, or remit withholding taxes was willful. *Winter v. United States*, 196 F.3d 339, 345 (2nd Cir. 1999). Willfulness involves a "voluntary, conscious and intentional act to prefer other creditors over the United States." *Buffalow v. United States*, 109 F.3d 570, 573 (9th Cir. 1997). Thus, "[i]f a responsible person knows that withholding taxes are delinquent, and uses corporate funds to pay other expenses, . . . our precedents require that the failure to pay withholding taxes be deemed 'willful .'" *Phillips v. I.R.S.*, 73 F.3d 939, 942 (9th Cir. 1996).

Here, Defendant concedes that he was aware that federal withholding taxes were not being paid to the Government in 1998, but nevertheless continued to pay other creditors. UMF ¶¶16-21. Defendant's deliberate decision to use corporate revenues received after he first became aware of the delinquency to pay other creditors, including himself, rather than to diminish Orbit's tax debt falls within the literal terms of the Ninth Circuit's definition of willfulness. *Klotz v. United States*, 602 F.2d 920, 923 (9th Cir. 1979) ("Willfulness" is defined as a "voluntary, conscious and intentional act to prefer other creditors over the United States.").

### 3. Summary

Based on the analysis above, the Court finds that Defendant was a responsible person at Orbit and he willfully failed to collect or pay over the taxes at issue within the meaning under section 6672. Accordingly, summary judgment is appropriate.

## C. Whether the IRS Should Have Collected From Other Individuals

Even though he may be held liable under § 6672, Defendant argues that the IRS abused its discretion by failing to seek payment of the taxes at issue from other entities or individuals before pursuing him. Opp'n at 3-5. Under § 6672, liability may extend to more than one corporate officer. *Chapman*, 7 F. App'x at 807 ("Section 6672 applies to all responsible persons, not just the most responsible."); *USLIFE Title Ins. Co. of Dallas v. Harbison*, 784 F.2d 1238, 1243 (5th Cir. 1986) ("The fact that more than one person is responsible for a particular delinquency does not relieve another responsible person of his or her personal liability, nor can a responsible person avoid collection against himself on the ground that the Government should first collect the tax from someone else."). The penalty "is distinct from and in addition to the employer's liability for these taxes." *Newsome v. United States*, 431 F.2d 742, 745 (5th Cir. 1970); *Teel v. United States*,

1   529 F.2d 903, 905 (9th Cir. 1976).

2   Here, even if there were entities or individuals other than Defendant through whom the
3   IRS could have collected Orbit's unpaid trust fund taxes, Defendant could not escape liability on
4   those grounds because the Government is not required to pursue collection against every
5   responsible person, or against the corporation itself, before attempting to collect from a
6   responsible person under § 6672. *Howard v. United States*, 711 F.2d 729, 735 (5th Cir. 1983)
7   (holding that director, minority shareholder, treasurer, and executive vice-president with
8   responsibility for day-to-day operations was responsible person, even though IRS could have
9   recovered from corporation if it had not delayed because IRS's handling of the corporate
10  deficiency is legally irrelevant to the separate issue of a responsible person's liability); *Datlof v.*
11  *United States*, 370 F.2d 655, 656 (3d Cir. 1966); *Hornsby v. Internal Revenue Service*, 588 F.2d
12  952, 954 (5th Cir. 1979)); *Gray v. United States*, 2012 WL 525512, at *2 (N.D. Cal. Feb. 16,
13  2012); *Balzer v. United States*, 2000 WL 1130075, *6 (N.D. Cal. Aug. 7, 2000) (citation and
14  quotations omitted) ("[T]he IRS is not obligated to pursue the assets of the corporation before
15  pursuing responsible persons.").

16  Defendant attempts to distinguish *Howard* on the grounds that he notified the IRS "that the
17  corporation had the funds to pay the outstanding taxes before the assessment of [TFRP] penalties
18  against him was final." Opp'n at 4. However, the court rejected the same argument in *Howard*,
19  finding that Howard's contention that the IRS should have promptly sought to collect the taxes
20  owed from Howard's corporation, rather than from him was "beside the point" because "Howard's
21  personal liability was independently established long before he notified the IRS of Eden's tax
22  deficiency." *Howard*, 711 F.2d at 736. Accordingly, this argument is without merit.

23  Defendant also argues that he is entitled to contest the merits of the original tax
24  assessment. Opp'n at 4 (citing *United States v. O'Connor*, 291 F.2d 520 (2nd Cir. 1961)).
25  However, this argument is again directed to the propriety of the IRS's decision to assess the entire
26  penalty against him, rather than to attempt to first collect from Defendant's now defunct company,
27  and thus fails for the same reasons. *See Reph v. United States*, 615 F. Supp. 1236, 1242 (N.D.
28  Ohio 1985) ("The [IRS] need not attempt collections of the tax assessment from the corporate

employer before asserting the personal liability of a responsible person.  In addition, as the liability of the employer is separate and distinct from that of the responsible person, the United States' lack of due diligence against the employer would not relieve the responsible person's liability.")  Thus, in light of the fact that it is unnecessary for the IRS to attempt collection from the corporate employer before asserting the personal liability of the responsible person, Defendant may not defeat summary judgment by arguing that the IRS should have collected from Orbit first.

## CONCLUSION

Based on the analysis above, the Court hereby GRANTS the Government's Motion for Summary Judgment in the amount of $1,744,051.20, less any payments or credits, plus all penalties and interest accruing after May 31, 2013, until paid in full.

**IT IS SO ORDERED.**

Dated: April 28, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge